**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| PATRIOT GENERAL | : | |
| INSURANCE COMPANY, | : | |
| | : | |
|     Plaintiff/ Counterclaim- | : | |
|     Defendant, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:12-CV-0997-RWS |
| LISA KREBS, | : | |
| | : | |
|     Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| CARMEN McREYNOLDS, | : | |
| | : | |
|     Defendant/ Counterclaim- | : | |
|     Plaintiff. | : | |

## <u>ORDER</u>

    This case comes before the Court on Plaintiff/ Counterclaim-Defendant

Patriot General Insurance Company's Motion to Dismiss [29] and Motion to

Stay Discovery [30].  After reviewing the record, the Court enters the following

Order.

**Background**

This declaratory judgment action arises out of and concerns an insurance company's failure to settle a claim within its insured's policy limits, resulting in a final judgment against the insured greatly in excess of those limits.  Plaintiff/ Counterclaim-Defendant Patriot General Insurance Company ("Patriot General") seeks a declaration that it "acted in good faith by timely offering to pay its $25,000 policy limits to settle a claim made by [Defendant] Krebs against [Patriot General's] insured, [Defendant/ Counterclaim-Plaintiff] McReynolds."  (Compl., Dkt. [1] ¶ 6.)  The facts alleged in the Complaint are as follows:  Patriot General provided automobile insurance to McReynolds with a bodily injury policy limit of $25,000.  (Id. ¶ 7.)  McReynolds was involved in a car accident with Krebs, which left Krebs injured and forced to undergo treatment at Grady Memorial Hospital.  (Id. ¶ 9.)  On August 4, 2005, Grady Memorial Hospital asserted a $273,435.35 lien on any settlement reached between Patriot General and Krebs, threatening to sue both Patriot General and its insured, McReynolds, in the event the lien was not satisfied at the time of any settlement.  (Id. ¶ 10.)

2

Thereafter, on August 24, 2005, Krebs made a time-limited demand for the $25,000 bodily injury liability limits under McReynolds's insurance policy with Patriot General.  (Id. ¶ 11.)  On September 1, 2005, Patriot General timely responded to the demand, agreeing to settle for the policy limits and asking how the hospital lien would be resolved:  "[W]e agree to settle this matter for the $25,000 per person limit.  Please call me in order to discuss how lien(s) (specifically, but not limited to the $273,435.35 lien from Grady Memorial Hospital) will be resolved as part of this settlement."  (Id. ¶ 12 (emphasis omitted); see also Answer and Counterclaims of Carmen McReynolds ("McReynolds's Counterclaims"), Ex. B (Pl.'s 9/1/2005 Letter), Dkt. [15-2].)  Krebs did not respond.  (Compl., Dkt. [1] ¶ 13.)  Patriot General alleges that it reiterated its willingness to tender the policy limit to Krebs, subject to the liens, in a September phone conversation with Krebs's counsel and in a September 27, 2005 letter, which stated, "This will supplement Patriot General's 9/1/05 response to your policy limits demand of 8/24/05.  Patriot General has tendered its full limits of $25,000 to Ms. Krebs, subject to liens. . . .  Please furnish your tax ID number and advise how and when you are ready to receive payment."

AO 72A
(Rev.8/82)

(Id. ¶ 15; see also McReynolds's Counterclaims, Ex. C (Pl.'s 9/27/2005 Letter), Dkt. [15-3].)  Krebs did not respond.  (Compl., Dkt. [1] ¶ 16.)

On December 20, 2005, Krebs filed suit in Georgia state court against McReynolds and General Motors ("GM"), the manufacturer of the vehicle involved in the accident.  (Id. ¶ 18.)  The litigation proceeded for eleven months, during which time Krebs "continued her silence regarding both her original policy limits demand and Patriot General's offers (and re-offers) to satisfy this demand."  (Id. ¶ 20.)  On or about November 27, 2006, Krebs settled with GM.  (Id. ¶ 22.)  Upon learning of the settlement with GM, Patriot General's counsel again asked Krebs's counsel for a tax identification number and sent Krebs a release form and draft affidavit confirming that she had resolved any applicable liens.  (Id. ¶ 23; see also McReynolds's Counterclaims, Ex. D (Pl.'s 12/22/2006 Letter), Dkt. [15-4].)

On December 27, 2006, however, Krebs informed Patriot General of her view that no settlement agreement had been reached because Patriot General's response to her policy limits demand–that Patriot General would pay the policy limits subject to the liens–constituted a counteroffer, which Krebs rejected. (Compl., Dkt. [1] ¶¶ 24, 33-34.)  Patriot General subsequently paid the $25,000

4

policy limits into the registry of the court, and McReynolds moved for summary judgment, asking the trial court to enforce the settlement.  (Id. ¶ 33.)  The trial court found that no settlement agreement had been reached, and Krebs eventually obtained a roughly $1.2 million judgment against McReynolds.[1]  (Id. ¶ 35.)

On June 29, 2009, shortly after trial, Krebs's counsel sent McReynolds a letter, which indicated that Krebs would have settled her claim against McReynolds had Patriot General simply tendered the $25,000 policy limits without conditions.  (Id. ¶ 39; see also McReynolds's Counterclaims, Ex. F (June 29, 2006 Letter from Krebs's Counsel to McReynolds), Dkt. [15-6].)  The letter further stated that Patriot General's failure to do so could constitute bad faith or negligence for which McReynolds may have a legal claim.  (Compl., Dkt. [1] ¶ 40; McReynolds Counterclaims, Ex. F, Dkt. [15-6].)  Patriot General subsequently filed the instant Complaint, seeking a declaration that, contrary to Krebs's assertions to McReynolds, it acted in good faith when it tendered the

---

[1] The Georgia Court of Appeals and Supreme Court affirmed the trial court's ruling that Patriot General and Krebs had not reached a settlement, Patriot General having made a "counteroffer" when it agreed to pay the policy limits subject to resolution of the liens.  (Id. ¶¶ 36-37 (citing McReynolds v. Krebs, 705 S.E.2d 214, 219 (Ga. Ct. App. 2010), McReynolds v. Krebs, 725 S.E.2d 584, 588 (Ga. 2012)).)

$25,000 policy limits subject to resolution of the liens.  (See generally Compl., Dkt. [1].)

While Patriot General seeks a declaratory judgment that it acted in good faith, McReynolds has filed counterclaims alleging the opposite.  (See generally McReynolds's Counterclaims, Dkt. [15].)  In Count I, McReynolds asserts a counterclaim for common law bad faith or negligent failure to settle.  (See id. ¶ 49 ("Patriot General had reasonable opportunities to settle Ms. Krebs' [sic] claims against Ms. McReynolds within policy limits.  Failing to hold its insured's financial interests in equal consideration to its own interests, Patriot General negligently, in bad faith and with a specific intent to injure failed to settle Ms. Krebs' [sic] claims . . . .).)  In support of this claim, McReynolds points to the fact that in December of 2006, Patriot General asked Krebs to sign a Lien Affidavit and Hold Harmless Agreement, which would have required Krebs to indemnify, defend, and hold Patriot General harmless for the Grady Memorial Hospital lien referenced in the Complaint.  (Id. ¶¶ 35-37.)  McReynolds contends, "By demanding that Ms. Krebs indemnify Patriot General for the Grady hospital lien . . . as a condition of settlement, Patriot General was looking out for its own interests at the expense of Ms.

6

McReynolds' [sic] interests." (Id. ¶ 39.) She further alleges that Patriot General made no attempt to resolve the Grady Hospital lien "other than to ask Ms. Krebs to resolve it." (Id. ¶ 41.)

In Count IV, McReynolds raises a counterclaim for breach of contract, alleging that Patriot General breached its duty to pay the policy limit in satisfaction of the judgment against her.[2] (Id. ¶ 55.) Finally, In Counts II, III, and V, McReynolds raises counterclaims for statutory attorney's fees, punitive damages, and litigation expenses based on Patriot General's alleged bad faith. (Id. ¶¶ 51, 53, 57-60.)

Patriot General now moves to dismiss McReynolds's counterclaims under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief may be granted (Dkt. [29]) and for a stay of discovery pending resolution of the motion to dismiss (Dkt. [30]). Patriot General first argues that McReynolds's bad faith counterclaim fails as a matter of law given a recent decision of the Georgia Court of Appeals, holding that an insurer's failure to settle within policy limits cannot, as a matter of law, constitute bad

---

[2] She also alleges breach of contract based on Patriot General's failure to pay unspecified "other amounts due under the Policy." (Id.)

7

faith, where the failure to settle results solely from the claimant's unreasonable refusal to assure satisfaction of hospital liens.  (Id. at 19-23 of 24 (citing S. Gen. Ins. Co. v. Wellstar Health Sys., Inc., 726 S.E.2d 488, 493-94 (Ga. Ct. App. 2012)).)  Second, Patriot General argues that McReynolds's breach of contract counterclaim fails as a matter of law given that Patriot General has paid the $25,000 policy limit into the registry of the court–refuting McReynolds's allegation that Patriot General has failed to pay the policy limit in satisfaction of the judgment against her.[3]  (Id. at 28-30 of 34.)  Finally, Patriot General argues that McReynolds has failed to show bad faith or any other conduct on the part of Patriot General that could entitle her to an award of attorney's fees, punitive damages, or litigation expenses.  (Id. at 30-31 of 34.)  The Court considers these arguments below.

## Discussion

**I.     Plaintiff/ Counterclaim-Defendant Patriot General Insurance Company's Motion to Dismiss** ("Patriot General's Motion to Dismiss") **[29]**

---

[3] To the extent McReynolds alleges breach of contract based on Patriot General's failure to pay "other amounts due under the Policy," Patriot General moves to dismiss for failure to comply with the pleading standards of Rule 8.  (Id. at 29 of 34 n. 91.)

8

A.      Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief."  While this pleading standard does not require "detailed factual

allegations," "labels and conclusions" or "a formulaic recitation of the elements

of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to

withstand a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face

when the plaintiff pleads factual content necessary for the court to draw the

reasonable inference that the defendant is liable for the conduct alleged.  Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as

true, and the reasonable inferences therefrom are construed in the light most

favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273

n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set

forth in the complaint.  Iqbal, 556 U.S. at 678.  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

9

suffice." Id.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.  Utilizing this framework, the Court considers whether Defendant/ Counterclaim-Plaintiff McReynolds has stated a plausible claim for relief such that Patriot General's Motion to Dismiss should be denied.

> B.      Analysis

As stated in the Background section, supra, McReynolds has asserted counterclaims against Patriot General for bad faith or negligent refusal to settle (Count 1), for breach of contract (Count IV), and for statutory attorney's fees, punitive damages, and litigation expenses (Counts II, II, and V).  The Court considers Patriot General's Motion to Dismiss as to each Count.

> 1.      *Bad Faith or Negligent Refusal to Settle (Count I)*

Patriot General argues that McReynolds's counterclaim for bad faith refusal to settle is barred by the recent Georgia Court of Appeals decision in Southern General Insurance Company v. Wellstar Health Systems, Inc., 726 S.E.2d 488, 493-94 (Ga. Ct. App. 2012).  In Wellstar, Southern General provided its insured with an automobile liability policy with a policy limit of $25,000.  726 S.E.2d at 490.  The insured was involved in a car accident with a

third party, who thereafter sought treatment at Wellstar, incurring medical expenses of approximately $22,000.  Id.  The hospital subsequently filed liens for the cost of this treatment against any recovery the injured claimant might receive from Southern General.  Id.

When the claimant made a time-limit demand that Southern General settle his claim for policy limits, Southern General requested that the claimant first sign a general release from liability and indemnification agreement, according to which the claimant would indemnify and hold Southern General harmless for any and all claims made against it for hospital expenses.  Id.  The claimant agreed to the general release but refused to sign the indemnification agreement.  Id.  Southern General nonetheless tendered the $25,000 policy limits.  Id. at 490-91.

Wellstar subsequently filed suit against Southern General to enforce the hospital liens, alleging that the latter willfully ignored the liens in violation of its statutory duty to satisfy them.  Id. at 491.  Southern General moved for summary judgment, arguing that its common law duty to settle within policy limits in the face of a time-limit settlement demand provided a defense to

Wellstar's action to enforce the liens.  Id.  The trial court rejected this argument

and denied summary judgment.  Id.

On appeal, Southern General argued that an insurance company's

common law duty to settle within policy limits (in cases where liability is

reasonably certain to exceed those limits and where the claimant has made a

time-limit settlement demand) and statutory duty to satisfy hospital liens

"impermissibly set up an insurance company to pay in excess of its

contractually agreed policy limits because it cannot both unconditionally accept

a time limit demand, and satisfy the statutorily enforced hospital lien."  Id.

(internal quotation marks omitted).  In considering and ultimately rejecting this

argument, the Court of Appeals first set out the apparently conflicting duties on

insurance companies in such cases:

> First, when faced with a time-limit settlement demand, an
> insurance company may be liable for damages to its insured for
> failing to settle the claim of an injured person when the insurer is
> guilty of negligence, fraud, or bad faith in failing to compromise
> the claim.  And in deciding whether to settle a claim within the
> applicable policy limits, the insurance company must give equal
> consideration to the interests of the insured. . . .
>
> Second, as to an insurance company's obligation to satisfy a
> hospital lien, O.C.G.A. § 44-14-470 provides that

12

> Any person, firm, hospital authority, or corporation
> operating a hospital . . . in this state shall have a lien
> for the reasonable charges for hospital . . . care and
> treatment of an injured person, which lien shall be
> upon any and all causes of action accruing to the
> person to whom the care was furnished . . . on account
> of injuries giving rise to the causes of action and
> which necessitated the hospital . . . care. . . .

Id. at 491-92 (internal quotation marks and citations omitted).  The Court

continued:

> As our Supreme Court has explained, the lien allows the hospital to
> step into the shoes of the insured for purposes of receiving
> payment from the tortfeasor's insurance company for economic
> damages represented by the hospital bill.  And after a hospital lien
> has been filed, no release of the cause or causes of action . . . shall
> be valid or enforceable against the lien . . . .  Moreover, the
> claimant . . . of the lien may enforce the lien by an action against
> the person . . . liable for the damages *or such person['s] . . .
> insurer*.

Id. (internal quotation marks and citations omitted) (emphasis in original).

The Court of Appeals ruled that these duties were not in conflict because

insurance companies can create a "safe harbor" from liability for bad faith

failure to settle when two conditions are satisfied: "when (1) the insurer

promptly acts to settle a case involving clear liability and special damages in

excess of the applicable policy limits, and (2) the *sole* reason for the parties'

13

inability to reach a settlement is the plaintiff's unreasonable refusal to assure the satisfaction of any outstanding hospital liens." Id. at 493 (emphasis in original). The court continued,

> Put another way, no reasonable jury could conclude that an insurer has refused to settle . . . in bad-faith when the only reason for the insurer's refusal to settle with the plaintiff is the insurer's *insistence that any settlement payment to plaintiff be conditioned on the satisfaction of hospital liens* that the insurer is obligated by statute to pay.

Id. at 494 (emphasis added).

In this case, Patriot General argues that the Wellstar "safe harbor" applies as a matter of law and forecloses McReynolds's counterclaim for bad faith refusal to settle. (Pl.'s Mem., Dkt. [29-1] at 21 of 34.)  Patriot General argues that it promptly agreed to settle Krebs's claim for the $25,000 policy limits, and that the sole reason a settlement was not reached was Krebs's refusal to *discuss* how the Grady Memorial Hospital liens would be resolved as part of the settlement–much less *assure their satisfaction*. (Id. at 22-23 of 34.)  The Court agrees.

The Court finds that under Wellstar, Patriot General cannot be found liable as a matter of law for bad faith refusal to settle.  Accepting the facts

14

alleged in support of the counterclaim as true, and drawing all reasonable

inferences therefrom, it is clear that Patriot General promptly responded to

Krebs's time-limit demand for settlement, agreeing within days of Krebs's

settlement demand to tender the $25,000 policy limits and asking Krebs's

counsel to "call . . . in order to discuss how the lien(s) . . . will be resolved as

part of the settlement."  (McReynolds's Counterclaims, Ex. B (Pl.'s 9/1/2005

letter to Krebs's counsel), Dkt. [15-2] at 1.)  It is also clear that the only reason

Patriot General and Krebs did not reach a settlement was Krebs's refusal to

respond to Patriot General's request that the parties discuss how the hospital

liens would be resolved as part of the settlement.[4]  On these facts, the <u>Wellstar</u>

"safe harbor" plainly applies, immunizing Patriot General from bad faith

liability.

---

[4] McReynolds objects to this conclusion, arguing that "Patriot General unreasonably attempted to put the onus of satisfying the lien on Ms. Krebs, looking out for its own best interests."  (Carmen McReynolds's Br. in Opp'n to Patriot General's Motion to Dismiss ("McReynolds's Opp'n Br."), Dkt. [39] at 16 of 24.) This argument is without merit.  The facts alleged show that in the face of Patriot General's request that counsel for Krebs contact Patriot General to "discuss" how the lien would be resolved as part of the settlement, which clearly is a proper request under <u>Wellstar</u>, Krebs was and remained silent.  Krebs's refusal to simply discuss the liens, much less assure their satisfaction, appears to be the only reason a settlement for policy limits never was reached.

Patriot General, however, does not address McReynolds's alternative claim that Patriot General negligently failed to settle Krebs's claim within policy limits, and the Court finds that McReynolds has alleged sufficient facts to state a plausible claim for relief under a negligence theory.  As stated in Wellstar, an insurer may be liable for failing to settle a claim not only on the basis of fraud or bad faith, but also where the insurer is guilty of negligence. 726 S.E.2d 491.  See also Cotton States Mut. Ins. Co. v. Brightman, 580 S.E.2d 519, 521 (Ga. 2003) ("An insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits.").

In this case, it appears from the facts alleged that Patriot General did attempt to settle Krebs's claim within policy limits on multiple occasions, finally by letter dated September 27, 2005.  It also appears, however, that following the September 27, 2005 letter and Krebs's filing of suit in December of 2005, eleven months of litigation were allowed to proceed against the insured with no further discussion between Krebs and Patriot General regarding settlement.  While Patriot General may have believed that a binding settlement already had been reached, it is clear that no agreement had been finalized.  On

16

these facts, the Court finds that McReynolds has stated a plausible claim that Patriot General was negligent in failing to finalize a settlement with Krebs, or in failing to take additional measures to prevent the litigation from going to trial, where McReynolds was exposed to the risk of a judgment in excess of policy limits.  Accordingly, McReynolds's Count I counterclaim for negligent failure to settle survives Patriot General's Motion to Dismiss.

### 2. *Breach of Contract (Count IV)*

In Count IV, McReynolds alleges that Patriot General is liable for breach of contract because it has failed to pay the policy limit in satisfaction of the judgment against her.  (McReynolds's Counterclaims, Dkt. [15] ¶ 55.)  Patriot General argues that this claim fails as a matter of law because Patriot General has satisfied its contractual obligations by paying the $25,000 policy limit into the registry of the court (Pl.'s Mem., Dkt. [29-1] at 28-29 of 34), which McReynolds does not deny (McReynolds's Opp'n Br., Dkt. [39] at 18-19).  In light of the fact that Patriot General has paid the policy limit into the registry of the Court, the Court agrees with Patriot General that the breach of contact

counterclaim fails as a matter of law.[5]

   3.    *Attorney's Fees, Punitive Damages, and Litigation Expenses (Counts II, III, and V)*

In Counts II, III, and V of her counterclaims, McReynolds seeks to recover attorney's fees, punitive damages, and litigation expenses under various statutory provisions authorizing such relief in the face of bad faith, willful misconduct, and other like behavior.  In Count III, McReynolds seeks to recover punitive damages under O.C.G.A. § 51-12-5.1 on grounds of Patriot General's alleged bad faith; in Count V, she seeks to recover attorney's fees on the same ground, pursuant to O.C.G.A. § 33-4-6.  (McReynolds's Counterclaims, Dkt. [15] ¶¶ 53, 57-60.)  As stated in Part I.B.1, <u>infra</u>, however, McReynolds's bad faith claim fails as a matter of law, and therefore she is not entitled to recover punitive damages or attorney's fees on this basis.  Accordingly, the claims for relief set out in Counts III and V fail as a matter of law.

---

   [5] As Patriot General correctly argues, the claim likewise fails under Rule 8 and <u>Twombly</u> to the extent it is based on the vague allegation that Patriot General failed to pay "other amounts due under the Policy."

In Count II of her counterclaims, McReynolds seeks recovery of attorney's fees pursuant to O.C.G.A. § 13-6-11 (Dkt. [15] ¶ 51), which provision authorizes such recovery on the basis of bad faith or where the opposing party has been "stubbornly litigious, or has caused the [claimant] unnecessary trouble and expense . . . ."  While McReynolds is not entitled to recover attorney's fees on the basis of bad faith, at this motion to dismiss stage of the litigation, the Court cannot rule as a matter of law that she is not entitled to attorney's fees on either of the alternative bases for relief provided by O.C.G.A. § 13-6-11.  Accordingly, McReynolds's counterclaim for attorney's fees set out in Count II is entitled to survive Patriot General's Motion to Dismiss.

In sum, Patriot General's Motion to Dismiss [29] is due to be GRANTED as to McReynolds's counterclaims for bad faith failure to settle (Count I), breach of contract (Count IV), and for statutory punitive damages and attorney's fees sought to be recovered on the basis of bad faith (Counts III and V).  It is due to be DENIED as to the counterclaim for negligent failure to settle (Count I) and for statutory attorney's fees under O.C.G.A. § 13-6-11 (Count II).

19

**II.     Plaintiff/ Counterclaim-Defendant Patriot General Insurance
Company's Motion to Stay Discovery** ("Patriot General's Motion to
Stay Discovery") **[30]**

Patriot General moves the Court for a stay of discovery pending
resolution of its Motion to Dismiss [29].  In light of the Court's having resolved
the Motion to Dismiss, the Motion to Stay is DENIED as moot.

### Conclusion

In accordance with the foregoing, Plaintiff/ Counterclaim-Defendant
Patriot General Insurance Company's Motion to Dismiss [29] is **GRANTED in
part and DENIED in part**.  It is **GRANTED** with respect to Defendant/
Counterclaim-Plaintiff McReynolds's counterclaim for bad faith failure to settle
(Count I), for breach of contract (Count IV), and for punitive damages and
attorney's fees sought to be recovered on the basis of bad faith (Counts III and
V), which claims hereby are dismissed with prejudice for failure to state a
claim.  It is **DENIED** with respect to Defendant/ Counterclaim-Plaintiff
McReynolds's counterclaim for negligent failure to settle (Count I) and for
attorney's fees pursuant to O.C.G.A. § 13-6-11 (Count II).  Finally, Plaintiff/
Counterclaim-Defendant Patriot General Insurance Company's Motion to Stay
Discovery [30] is **DENIED as moot**.

20

**SO ORDERED**, this __20th__ day of July, 2012.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)